McDANIEL v ALLSTATE INSURANCE COMPANY

Docket No. 76440. Submitted June 10, 1985, at Detroit.—Decided July 18, 1985.

Plaintiff, Lance M. McDaniel, a minor, was injured while attempting to free the track of a snowmobile of ice which had caused the track to be inoperable. Plaintiff, by his next friend Robert Elkins, brought an action against Allstate Insurance Company to recover no-fault benefits under a policy issued to Robert Elkins, the minor's stepfather. Defendant brought a motion for summary judgment, alleging that a snowmobile is not a motor vehicle within the meaning of the no-fault act and that, therefore, plaintiff was not entitled to no-fault benefits. The Oakland Circuit Court, Fred M. Mester, J., denied the motion for summary judgment, holding that a snowmobile is designed for operation on a public highway and is, therefore, a motor vehicle. Defendant appealed by leave granted. *Held:*

A snowmobile, not being primarily designed for operation on a public highway, is not a "motor vehicle" for purposes of the no-fault act. The fact that it may, under some circumstances, be operated on a highway does not make it primarily designed for such use. The trial court erred in denying defendant's motion for summary judgment.

Reversed and remanded for entry of judgment in favor of defendant.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — PLEADING.

A motion for summary judgment based upon a plaintiff's failure to state a claim upon which relief may be granted tests the legal sufficiency of the pleadings, and the court, in ruling on

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Pleading §§ 230 *et seq.*

Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.

[2, 3] Am Jur 2d, Automobile Insurance §§ 340 *et seq.*

What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.

[3] Am Jur 2d, See the annotations in the ALR3d/4th Quick Index under topic Snowmobile.

such a motion, must accept all well-pled allegations as true; a mere statement of conclusions, without factual allegations to support them, will not suffice to state a cause of action or to survive a motion for summary judgment (GCR 1963, 117.2[1]).

2. INSURANCE — NO-FAULT ACT — MOTOR VEHICLE.

A "motor vehicle", for purposes of the no-fault act, is a vehicle operated or designed for operation upon a public highway, powered by a source other than muscular power, and having more than two wheels (MCL 500.3101[2][c]; MSA 24.13101[2][c]).

3. INSURANCE — NO-FAULT ACT — MOTOR VEHICLE — SNOWMOBILES.

A snowmobile is not primarily designed for operation on a public highway and is not, therefore, a "motor vehicle" within the meaning of the no-fault act; the fact that it may under certain circumstances be operated upon the right of way of a highway does not make it a vehicle primarily designed for operation on a highway (MCL 257.1501[e], 500.3101[2][c]; MSA 9.3200[1][e], 24.13101[2][c]).

*Bebout, Potere, Cox & Hughes, P.C.* (by *John P. Strayer*), for plaintiff.

*Mitchell & Leon* (by *Dora P. Primus*), and *Gromek, Bendure & Thomas* (by *John A. Lydick*), of counsel, for defendant.

Before: DANHOF, C.J., and R. B. BURNS and V. J. BRENNAN, JJ.

PER CURIAM. Defendant appeals by leave granted from an order denying its motion for summary judgment on plaintiff's claim for no-fault benefits. We reverse and remand for entry of judgment consistent with this opinion.

The present case arises out of defendant's refusal to pay no-fault benefits under a no-fault policy issued to plaintiff's stepfather, Robert Elkins, for injuries sustained by plaintiff on February 13, 1982. On that date, at approximately 5:00 p.m., plaintiff, then 12 years old, was at the home of a friend when the two boys decided to go snow-

mobiling. The snowmobile was not functioning properly, so the boys turned it over on its side in order to ascertain what was causing the problem. They discovered that the track on the bottom of the machine was completely jammed with ice. Plaintiff tried to dislodge the ice by hitting the track with his fist. While plaintiff was hitting the track, the other boy went to the other side of the snowmobile and, instead of turning the engine off as plaintiff expected, the boy "gunned" the engine, catching the tip of plaintiff's glove in the track and pulling his right hand and arm into the machine. Plaintiff sustained injuries requiring a one-month stay in the hospital.

On June 11, 1982, plaintiff's stepfather, Robert Elkins, as plaintiff's next friend, filed a complaint for the recovery of no-fault medical insurance benefits. The complaint alleged that, as of the date of the accident, plaintiff was covered by Elkins's insurance policy with Allstate. According to plaintiff, Allstate failed or otherwise refused to pay plaintiff's hospital and medical costs, as required under the policy and under Michigan's no-fault act. The complaint requested that the trial court issue a declaratory judgment to the effect that defendant had a duty to provide plaintiff with benefits to cover all reasonable and necessary expenses related to and arising out of his injuries.

Defendant moved for summary judgment pursuant to GCR 1963, 117.2(1) and (3) [now MCR 2.116(c)(8) and (10)], arguing that a snowmobile is not a "motor vehicle" within the meaning of § 3101(2)(c) of the no-fault act. MCL 500.3101(2)(c); MSA 24.13101(2)(c). Defendant concluded that, because plaintiff was not injured while operating a "motor vehicle", he was not entitled to benefits under the no-fault act as a matter of law. There is no dispute that plaintiff's stepfather was insured

by defendant at the time of the accident or that the policy extends coverage to plaintiff for injuries caused by the use of a motor vehicle as a motor vehicle.

The trial court treated the motion for summary judgment as one brought solely under GCR 1963, 117.2(1) and held that a snowmobile was designed for operation on a public highway and was, thus, a motor vehicle. Defendant moved for rehearing, which motion was denied.

At the hearing on its motion, defendant argued that in order to be a motor vehicle under the no-fault act, a snowmobile would have to have more than two wheels and be designed for use primarily on the highway, neither of which applied here. Plaintiff argued that the more-than-two-wheel requirement should not be applied to snowmobiles inasmuch as the requirement was intended by the Legislature only to exclude motorcycles from the definition of motor vehicles. Plaintiff further stated that, since there were some instances in which a snowmobile could legally be operated on a public highway, a snowmobile was a motor vehicle within the statutory definition. On appeal, defendant posits the same arguments in support of its position.

A motion for summary judgment based upon GCR 1963, 117.2(1) tests the legal sufficiency of the pleadings. The trial court, when ruling on such a motion, must accept as true all well-pled facts in the complaint. "[A] mere statement of conclusions, without factual allegations to support them, will not suffice to state a cause of action or survive a motion for summary judgment." *Zaschak v Traverse Corp,* 123 Mich App 126, 128; 333 NW2d 191 (1983). In order to state a valid claim for no-fault benefits, plaintiff was required to plead facts sufficient to establish that his injuries arose out of the

use of a "motor vehicle" as a motor vehicle. Section 3101(2)(c) of the act contains the following definition of "motor vehicle":

" 'Motor vehicle' means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in § 32b of Act No. 300 of the Public Acts of 1949." MCL 500.3101(2)(c); MSA 24.13101(2)(c).

As is clear from the statutory language, in order to come within the above definition, a vehicle must be operated or designed for operation upon a public highway, be powered by a source other than muscular power, and have more than two wheels. *Apperson v Citizens Mutual Ins Co,* 130 Mich App 799, 801; 344 NW2d 812 (1983).

The appellate courts of this state have not yet determined whether a snowmobile is a "motor vehicle" under § 3101(2)(c) of the act. As a starting point, we note here that the snowmobile was not, in fact, operated upon a public highway, so that our first inquiry is whether it was *designed* for operation upon a public highway.

In *Ebernickel v State Farm Mutual Automobile Ins Co,* 141 Mich App 729; 367 NW2d 444 (1985), the plaintiff was injured at his place of employment when he was struck from behind by a "hi-lo". The machine had an engine, four wheels, lights and an exhaust system. It was capable of being driven on a highway. This Court ruled that the hi-lo was not a motor vehicle because it was not "*primarily* designed for operation on a public highway" at the time of the accident. 141 Mich App 731. (Emphasis added.) In discussing the requirement that the machine be primarily designed for highway use, the *Ebernickel* Court stated that

the fact that the machine *could be operated* on a highway or *had been previously operated* on a highway was of no consequence. Compare *Apperson, supra; Johnston v Hartford Ins Co,* 131 Mich App 349; 346 NW2d 549 (1984), *lv den,* 419 Mich 893 (1984).

A snowmobile is not designed for primary use on public highways. "Snowmobile" is not defined in the no-fault act. It is, however, defined in the Motor Vehicle Code as follows:

" 'Snowmobile' means any motor driven vehicle *designed for travel primarily on snow or ice of a type which utilizes sled type runners or skis,* or an endless belt tread or any combination of these or other similar means of contact with the surface upon which it is operated." (Emphasis added.) MCL 257.1501(e); MSA 9.3200(1)(e).

Furthermore, it is illegal to drive a snowmobile on a public highway except under certain limited circumstances. Those circumstances include emergencies, special events of limited duration where proper permits have been issued, crossing over roads to get to a different area and crossing over bridges and culverts where necessary. MCL 257.1512(b), (d), (f) and (g); MSA 9.3200(12)(b), (d), (f), and (g). Snowmobiles may also be operated on non-snowplowed country roads outside the corporate limits of a city or village where such a road is designated and marked for snowmobile use by the county road commission. MCL 257.1512(e); MSA 9.3200(12)(e).

While snowmobiles are designed so that under some circumstances they can be used on public highways, the ability at some point to use the snowmobile on a road does not indicate that the vehicle was "designed" to be operated on a road. As in *Ebernickel, supra,* we look to whether the

vehicle was *primarily* designed to operate upon a public highway. Because MCL 257.1512; MSA 9.3200(12) "primarily" prohibits the use of snowmobiles on public highways, we hold that such vehicles are not motor vehicles within the meaning of § 3101(2)(c). The fact that snowmobiles may operate on the right-of-way portion of a public highway ["that portion of a highway * * * less the roadway and any shoulder", MCl 257.1501(j); MSA 9.3200(1)(j)] does not, contrary to plaintiff's contention, make a snowmobile primarily designed for operation on a public highway. Snowmobiles are more properly considered off-the-road vehicles. Compare *DAIIE v Spafford,* 76 Mich App 85, 89; 255 NW2d 780 (1977), *lv den* 402 Mich 825 (1977). Our disposition of this issue makes it unnecessary to address plaintiff's contention that a snowmobile has more than two wheels within the meaning of § 3101(2)(c).

Reversed and remanded for entry of judgment in favor of defendant.