LOGAN v COMMERCIAL CARRIERS, INC

Docket No. 85534. Submitted April 16, 1986, at Detroit. Decided June 17, 1986.

Clarence Logan, an employee of Commercial Carriers, Inc., a car hauler, was loading a motor home chassis onto a tractor trailer when the portable seat in which he was sitting became dislodged and caused Logan to fall and strike his back against the side of the trailer. As a result of the injury, Logan received workers' compensation benefits from Commercial Carriers. He also applied to Commercial Carriers and Old Republic Insurance Company for no-fault insurance benefits. Those claims were denied. Logan filed suit against Commercial Carriers and Old Republic in Wayne Circuit Court seeking the no-fault benefits. The court, Thomas Roumell, J., granted summary judgment in favor of defendants, finding that the chassis being loaded was freight rather than a motor vehicle for purposes of the parked vehicle provision of the no-fault act. Plaintiff appealed. *Held:*

The chassis involved was not a motor vehicle within the statutory definition of motor vehicle found in the no-fault act. The trial court correctly granted summary judgment in favor of defendants.

Affirmed.

INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLES — WORKERS' COMPENSATION.

The driving of a truck chassis onto a trailer for shipment as cargo constituted the loading of a vehicle during the course of employment for purposes of the parked vehicle provision of the no-fault act where the chassis, in its stripped-down state, was not designed primarily for operation on the highway; an employee injured while driving such a chassis onto a trailer is not entitled to no-fault benefits where workers' compensation cover-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 229 *et seq.,* §§ 340 *et seq.*

What constitutes a "motor vehicle" covered under no fault insurance. 60 ALR3d 651.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

age exists (MCL 500.3101[2][c], 500.3106[2]; MSA 24.13101[2][c], 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Stegman & Kelin, P.C.* (by *James R. Stegman*), for defendants.

Before: M. J. KELLY, P.J., and SHEPHERD and C. W. SIMON,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting defendants' motion for summary disposition entered pursuant to MCR 2.116(C)(10).

The facts are not in dispute. Plaintiff was employed by defendant Commercial Carriers, Inc., a car hauler, to load the company's trailers with cargo. On April 21, 1983, plaintiff was loading a tractor trailer with a motor home chassis. While driving the chassis onto the trailer, plaintiff was injured when the portable seat in which he was sitting became dislodged and caused plaintiff to fall and strike his back against the side of the trailer.

As a result of the injury, plaintiff received workers' compensation benefits from defendant Commercial Carriers. Plaintiff also applied to both Commercial Carriers and Old Republic Insurance Company for no-fault insurance benefits. After plaintiff's claim was denied, he instituted this suit.

We are called upon to interpret an amendment to the parked vehicle provision of the no-fault act, MCL 500.3106; MSA 24.13106. Subsection (2) now reads:

*Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

> *parked vehicle as a motor vehicle if benefits under
> the worker's disability compensation act of 1969,
> . . .* as amended, being sections 418.101 to 418.941
> of the Michigan Compiled Laws, *are available to
> an employee who sustains the injury in the course
> of his or her employment while loading, unloading,
> or doing mechanical work on a vehicle unless the
> injury arose from the use or operation of another
> vehicle.* [Emphasis added.]

Subsection (2) was added to preclude individuals
eligible for workers' compensation benefits from
collecting no-fault benefits for injuries arising from
acts of loading or unloading a parked vehicle.

The construction to be given to the words "load-
ing" and "unloading" was recently addressed by
this Court. In *Bell v F J Boutell Driveaway Co,* 141
Mich App 802, 810-811; 369 NW2d 231 (1985), this
Court, after reviewing the legislative purpose and
history of the amendment, concluded that:

> [T]he Legislature intended to eliminate duplica-
> tion of benefits for work-related injuries *except
> where the actual driving or operation of a motor
> vehicle is involved.* Therefore, we find it appropri-
> ate to broadly interpret the terms "loading" and
> "unloading" in subsection (2) because by doing so
> the statute further eliminates duplication of bene-
> fits for work-related injuries that do not relate to
> the actual driving or operation of a motor vehicle.
> [Emphasis added.]

Thus, the driving of the chassis onto the trailer
for shipment as cargo constituted the loading of a
vehicle during the course of employment. The
question remaining to be resolved is whether "the
injury arose from the use or operation of another
vehicle."

Section 3101(2)(c) of the no-fault act defines "mo-
tor vehicle" as follows:

> "Motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in section 32b of Act No. 300 of the Public Acts of 1949.

Accordingly, to fall within the statutory definition, a vehicle must be operated or designed for operation upon a public highway, be powered by a source other than muscular power, and have more than two wheels. *McDaniel v Allstate Ins Co,* 145 Mich App 603, 607; 378 NW2d 488 (1985).

The chassis in this case was the stripped-down frame of a vehicle, consisting of steel rails, a motor, and a steering wheel. Although it did not include the body, hood, windshields, or even the seat of the finished vehicle, there is no dispute that the chassis was powered by an engine and had more than two wheels. Because the chassis was not being operated upon a public highway at the time of the injury, the decisive inquiry is whether the chassis was *designed* for operation upon a public highway.

Plaintiff argues that because the chassis was equipped with the minimal components for highway operation (e.g., engine, wheels, steering wheel, etc.) and because similar chassis had been operated on public streets by employees of defendant Commercial Carriers, the chassis was designed for operation on a public highway. We disagree.

In *Apperson v Citizens Mutual Ins Co,* 130 Mich App 799; 344 NW2d 812 (1983), this Court ruled that a car which had been modified for racing on a track was not a "motor vehicle" because it was no longer designed for use on a public highway. This

Court noted that the vehicle was no longer equipped with lights, windshield wipers, turn signals, exhaust pipes, or an outside mirror. *Id.,* 801-802.

Even more persuasive is this Court's decision in *Ebernickel v State Farm Mutual Automobile Ins Co,* 141 Mich App 729; 367 NW2d 444 (1985), lv den 422 Mich 969 (1985). In *Ebernickel,* the plaintiff was injured at his place of employment when he was struck from behind by a forklift which was equipped with an engine, four wheels, lights and an exhaust system and was capable of being driven on a highway. This Court ruled that the forklift was not a "motor vehicle" because it was not "*primarily* designed for operation on a public highway" at the time of the accident. *Id.,* 731 (emphasis added). Significantly, this Court also stated that the fact that the machine "could be" or "had been previously" operated on a highway was of no consequence in the determination of whether the vehicle was primarily designed for highway use.

Similarly, we find that the chassis in this case was not a motor vehicle within the statutory definition. While it may have been equipped with a motor, steering wheel, and tires, it was not equipped with a body, hood, windshield, or a permanent seat. In its stripped-down state, the chassis was not designed primarily for operation on a highway. The fact that defendant Commercial Carriers may have operated similar chassis on the highway is of no consequence.

Given the above, we find that granting summary disposition in favor of defendants was not erroneous.

Affirmed.