SCHOENITH v AUTOMOBILE CLUB OF MICHIGAN

Docket No. 94536. Submitted April 14, 1987, at Lansing. Decided July 6, 1987.

Emil J. Schoenith was injured while working on a car he was preparing for his own use in a demolition derby. The windows, headlights, grill, back seat, padding, and taillights had been removed, the doors welded shut and the gas tank replaced with a gas tank for a boat. Schoenith filed a claim for no-fault personal protection insurance benefits with Automobile Club of Michigan, which had issued a policy to Schoenith's mother. Auto Club denied coverage and refused to pay benefits on the ground that the automobile upon which Schoenith had been working was modified to the extent that it was no longer a motor vehicle under the provisions of the no-fault act. Schoenith filed suit against Auto Club in Cheboygan Circuit Court seeking payment of the personal injury protection benefits. The court, Robert C. Livo, J., granted summary disposition in favor of Auto Club, finding that the modifications performed on the automobile so changed the automobile that it was no longer a motor vehicle for purposes of the no-fault act. Plaintiff appealed.

The Court of Appeals *held:*

The trial court correctly ruled that the automobile at issue was no longer a motor vehicle for purposes of the no-fault insurance act.

Affirmed.

INSURANCE — NO-FAULT — MOTOR VEHICLES.

A vehicle originally designed for use upon public highways may be modified in such a manner that it loses its status as a motor vehicle under the no-fault insurance act (MCL 500.3101[2][c]; MSA 24.13101[2][c]).

*Lyon & Hackett* (by *Anthony M. Damiano*), for plaintiff.

REFERENCES

Am Jur 2d, Automobile Insurance § 351.

What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.

*Gromek, Bendure & Thomas* (by *Nancy L. Bosh* and *Martha F. Mothershead*), for defendant.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

PER CURIAM. Plaintiff appeals as of right from the August 4, 1986, circuit court order holding that the vehicle which plaintiff was working on when he was injured was not a motor vehicle for purposes of § 3101(2)(c) of the no-fault act, MCL 500.3101(2)(c); MSA 24.13101(2)(c).

The facts are undisputed. The parties submitted the case to the trial court upon a stipulated statement of facts. In September, 1983, plaintiff began working for Kling's Automotive. In 1984, plaintiff decided to enter an area demolition derby scheduled for August 18, 1984. Kling's Automotive gave plaintiff one of its cars, but plaintiff was to pay the entry fee. He was to have "Kling's Automotive" painted on it and, after the derby, he was to give the car back to Kling's. Plaintiff was to prepare the car for the derby himself, and he was to drive it himself.

The fairgrounds gave plaintiff a copy of the derby rules and regulations. The automobile, a 1971 two-door Pontiac Catalina, was given to plaintiff one week before the derby. Title to the automobile remained in Kling and Lafrinere, the owners of Kling's Automotive. The automobile did not run when plaintiff received it from the garage at Kling's because it needed an alternator, a fuel pump, and an adjustment to the timing. Plaintiff made the necessary repairs, and also installed brakes and a radiator. In order to get the automobile ready for the derby, plaintiff altered the auto-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

mobile in accordance with derby regulations. He took out the windows, welded the doors shut, and replaced the automobile's gas tank with a boat motor gas tank installed inside the trunk. Plaintiff ran a steel line from the boat motor gas tank through the interior of the automobile to the car's engine. He removed the headlights, the grill, and "all your metal." Plaintiff had not yet removed the bumper but was planning to do so. He removed the back seat and the padding and the taillights. Other employees were also working on cars they were going to enter in the derby.

A day before the derby, plaintiff had gotten the engine running. The fuel pump line had a break, however, so plaintiff crawled underneath the automobile to try to tighten it up and also to tighten the radiator hose. Plaintiff's pliers hit the frame and the battery terminal, causing a spark. Some gasoline which had leaked onto plaintiff ignited, and his arm caught fire. He crawled out from underneath the automobile and dove into a nearby mud puddle.

Plaintiff had plans to either tow or drive the automobile the one mile to the fairgrounds where the derby was to be held. If he chose to drive it, he would have had to "sneak" it onto the road. At the time of the accident, the only things left to be done to ready the car for the derby were to put a different battery inside a milk crate in the car, tighten the battery and make sure the doors were properly welded shut.

Plaintiff made a claim for no-fault personal protection insurance benefits from defendant, his mother's insurance carrier, since plaintiff was an insured under her policy. Defendant denied coverage and refused to pay benefits.

Plaintiff filed a complaint against defendant, alleging that he had filed for personal protection

insurance benefits but defendant refused to pay. Defendant answered and filed three affirmative defenses. The only affirmative defense pertinent to this appeal was that the automobile upon which plaintiff had been working was modified to the extent that it was no longer a motor vehicle under the no-fault act. On June 9, 1986, a settlement conference took place, at which the parties agreed to submit the case to the court on a stipulated statement of facts and on cross motions for summary disposition. On July 10, 1986, plaintiff filed his motion for summary disposition pursuant to MCR 2.116(C)(9) and (10). On July 21, 1986, defendant filed its motion for summary disposition pursuant to MCR 2.116(C)(8) and (10).

On August 4, 1986, the trial judge issued his opinion and order, finding the modifications plaintiff performed on the automobile changed the automobile so that it was not a motor vehicle for purposes of the no-fault act. For that reason, the court granted defendant's motion for summary disposition. Plaintiff appeals as of right.

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition on the ground that the automobile plaintiff was working on when he was injured was not a motor vehicle for purposes of the no-fault act.

MCL 500.3105(1); MSA 24.13105(1) states:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

MCL 500.3101(2)(c); MSA 24.13101(2)(c) states in pertinent part:

> "Motor vehicle" means a vehicle, including a

trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels.

The insurance policy defined motor vehicle as follows:

> Motor Vehicle means a vehicle, including a trailer, with more than two wheels required to be registered in Michigan. The motor vehicle must be operated, or designed for operation, upon a public highway by power other than muscular power. Motor vehicle does not include a motorcycle or moped.

In the instant case, the vehicle in question was designed to operate by power other than muscular power and it had more than two wheels, but it was not being operated on a public highway. Therefore, the only question is whether it was "designed for operation upon a public highway." We find that *Apperson v Citizens Mutual Ins Co,* 130 Mich App 799; 344 NW2d 812 (1983), is dispositive of the issue.

In *Apperson,* this Court held that a street stock car involved in a stock car race was not a motor vehicle for purposes of MCL 500.3101(2)(c); MSA 24.13101(2)(c). *Apperson, supra,* 801. The automobile in *Apperson* had had all its outside lights and glass removed, was equipped with only one seat and a full roll cage, was without lights, windshield wipers, turn signals, and exhaust pipes. The automobile in the instant case had almost identical modifications. See also *Ebernickel v State Farm Mutual Automobile Ins Co,* 141 Mich App 729; 367 NW2d 444, lv den 422 Mich 971 (1985), and *Logan v Commercial Carriers, Inc,* 152 Mich App 701; 394 NW2d 470 (1986).

Plaintiff cites language in defendant's insurance policy which plaintiff claims warrants coverage. Plaintiff argues that the Catalina is covered pursuant to the definition of "car" given in the policy as "a vehicle of the same type as the one described on the Declaration Certificate." However, the policy also requires that a "motor vehicle" be operated, or designed for operation, on a public highway and the provision for personal protection insurance covers injury arising out of the ownership, maintenance or use of a "motor vehicle." Thus, the definition of car is not the crucial description for purposes of the personal protection insurance.

The trial court ruled correctly in holding that the automobile which defendant was working on when he was injured was not a motor vehicle for purposes of the no-fault insurance act.

Affirmed.