*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUDREY WEST and RANDY WEST,

Plaintiffs-Appellees,

FOR PUBLICATION
August 6, 2020
9:00 a.m.

v

DEPARTMENT OF NATURAL RESOURCES,
ANDREA ALBERT, and STEVE BUTZIN,

Defendants-Appellants.

No. 348452
Court of Claims
LC No. 18-000236-MZ

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

In this personal-injury action, defendants, the Department of Natural Resources (DNR) and two of its conservation officers appeal as of right the order of the Court of Claims denying the DNR's motion for summary disposition premised upon governmental immunity. The only issue in this appeal is whether the DNR-owned snowmobiles involved in the accident underlying this case met the definition of "motor vehicle" for purposes of the exception to governmental immunity set forth in MCL 691.1405. The trial court ruled that they did, and thus denied the motion. For the reasons discussed below, we affirm.

## I. FACTS

Plaintiffs, a father and daughter, were driving a snowmobile on Pinney Bridge Road in Chestonia Township when they allegedly encountered the defendant conservation officers, acting in the course of their employment with the DNR, driving DNR-owned snowmobiles on the same road in the wrong direction. Although defendants primarily attempt to characterize Pinney Bridge Road as a mere snowmobile trail, as opposed to a roadway proper, they also describe it as "an unpaved, country road." Plaintiffs assert that they were forced to swerve off the road. As a result, plaintiffs' snowmobile crashed, the daughter was thrown into a nearby river, and the father was pinned underneath the snowmobile.

Plaintiffs commenced action in the Court of Claims, arguing, in relevant part, that under MCL 691.1405, the DNR was liable for their alleged injuries on the ground that they were caused by motor vehicles owned by the DNR and operated by its employees in the course of their

employment. Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing in relevant part that snowmobiles are not motor vehicles, so MCL 691.1405 did not defeat the DNR's immunity.

The Court of Claims considered the motion without oral argument, and it issued a written opinion and order denying the DNR's motion for summary disposition. The court analyzed several cases that held that such vehicles other than cars or trucks as tractors and mowers constituted "motor vehicles" for purposes of MCL 691.1405. Reasoning that snowmobiles were similar to such conveyances, and noting that the ones in question were being driven on a public roadway by the DNR's employees "to assist them in their duties," the Court of Claims ruled that the snowmobiles in this case were motor vehicles triggering the exception to governmental immunity under MCL 691.1405. This appeal followed.

## II. ANALYSIS

A trial court's decisions on motions for summary disposition, and also on questions of statutory interpretation, are reviewed de novo. See *McCahan v Brennan*, 492 Mich 730, 735-736; 822 NW2d 747 (2012). So long as issues are brought to the trial court's attention, they are preserved for our review irrespective of whether the trial court rules on, or even recognizes, them. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). We may address questions of law where "the facts necessary for [their] resolution have been presented." See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). We note that defendants chose to file a motion for summary disposition in lieu of an answer and before discovery, and thus any insufficiency in the record would make summary disposition at least premature. See *Hoffman v Warden*, 184 Mich App 328, 337; 457 NW2d 367 (1990).

Under the governmental tort liability act, MCL 691.1401 *et seq*., governmental agencies in this state are generally immune from tort liability for actions taken in furtherance of governmental functions. MCL 691.1407(1). "It is well established that governmental immunity is not an affirmative defense, but is instead a characteristic of government." *Fairley v Dep't of Corrections*, 497 Mich 290, 298; 871 NW2d 129 (2015), citing *Mack v Detroit*, 467 Mich 186, 198; 649 NW2d 47 (2002). It is a plaintiff's burden to plead and prove facts establishing an exception to governmental immunity. *Fairley*, 497 Mich at 298, 300; *Mack*, 467 Mich at 198. "The Legislature has provided six exceptions to this broad grant of immunity, which courts must narrowly construe." *Yono v Dep't of Transp*, 499 Mich 636, 646; 885 NW2d 445 (2016) (quotation marks and citation omitted).

One such statutory exception is the so-called motor-vehicle exception, which provides that governmental agencies remain "liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . " MCL 691.1405.

MCL 691.1405 does not define "motor vehicle." The Michigan Vehicle Code, MCL 257.1 *et seq*., provides a definition of both "owner," MCL 257.37, and "motor vehicle," MCL 257.33. However, our Supreme Court has explained that MCL 691.1405 only refers to the Vehicle Code's definition of "owner," and it does *not* rely on the Vehicle Code's definition of "motor vehicle." *Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002). Reasoning that the rule

requiring narrow construction of statutory exceptions to immunity called for "a narrow definition to the undefined term 'motor vehicle,' " the Court held that "motor vehicle" for purposes of the motor-vehicle exception is "an automobile, truck, bus, or similar motor-driven conveyance." *Id.* at 618. The Court concluded that forklifts do not meet the definition of "motor vehicle" because a forklift is a piece of industrial equipment not similar to a car, truck, or bus. *Id.* As our dissenting colleague aptly notes, it has proved difficult to apply the concept of a "similar motor-driven conveyance," but courts may not rely on the easily-applied definition in MCL 257.33, so courts have generally considered a proposed motor vehicle's physical characteristics, design and intended use, and actual use.

The Court expanded that analysis in its order in *Overall v Howard*, 480 Mich 896; 738 NW2d 760 (2007), in which it reversed this Court's unpublished decision holding that a golf cart met the definition of "motor vehicle" and expressly adopted the contrary reasoning of the partial dissent. Supreme Court orders are binding precedent "to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions . . . " *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018). Accordingly, the reasoning in the unpublished partial dissent from this Court is now binding precedent, expanding upon *Stanton*'s "similar motor-driven conveyance" analysis to include consideration of whether the conveyances at issue were designed for operation on or along the roadway:

> [T]he vehicles at issue in [other cases applying MCL 691.1405] were motor-vehicle-like conveyances that were designed for operation on or alongside the roadway, and each of these conveyances generally resembled an automobile or truck. In contrast, the forklift at issue in *Stanton* was not similar to an automobile, bus, or truck, and was not designed for operation on or alongside the roadway. [*Overall v Howard*, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2007 (Docket No. 274588) (JANSEN, J., concurring in part and dissenting in pertinent part), partial dissent at 1.]

The dissent, and thus our Supreme Court, held that a golf cart, like a forklift, is not intended to be operated on or alongside a roadway. *Id.*

This Court has held that such conveyances as a Gradall hydraulic excavator, *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274, 278; 705 NW2d 136 (2005), aff'd 480 Mich 75 (2008), a "broom tractor" and a "tractor mower" performing roadside maintenance, *Regan v Washtenaw Co Rd Comm'rs (On Remand)*, 257 Mich App 39, 47-48; 667 NW2d 57 (2003), and a tractor pulling a wagon with passengers for hayrides, *Yoches v Dearborn*, 320 Mich App 461, 474; 904 NW2d 887 (2017), are "motor vehicles" for purposes of MCL 691.1405. In the latter case, this Court rejected the municipal defendant's argument that tractors and hay wagons were most typically found on farms and not roadways, emphasizing that "binding caselaw is quite clear that the 'primary function' of a vehicle does not control the analysis." *Yoches*, 320 Mich App at 474. We note that it is a matter of common, everyday experience in farming and rural communities that tractors *are* commonly, if perhaps seasonally and not necessarily daily, found on roadways.

There is no dispute that snowmobiles are motor-driven. There is also no contention that snowmobiles are automobiles, trucks, or buses. The question is whether they are "similar motor-driven conveyances." Applying the above principles, we must consider whether a snowmobile is

-3-

more like a tractor or an excavator, which would make it a motor vehicle triggering the immunity exception, or more like a golf cart or forklift, which would not. There is no doubt snowmobiles are physically capable of operating on roads; moreover, they are capable of travelling extended distances like tractors, the excavator at issue in *Wesche*, and conventional automobiles—and in contrast to much more limited machinery like golf carts and forklifts. Thus, snowmobiles are physically more analogous to automobiles than not.[1]

Defendants argue that snowmobiles neither typically, nor usually legally, travel on public roadways as part of normal operations. However, as noted, a conveyance's primary intended purpose does not determine whether it is a motor vehicle for purposes of the motor-vehicle exception to governmental immunity. Similarly, defendants argue that snowmobiles are not meant to operate on public roadways. We are doubtful that this is accurate.[2] In any event, whether snowmobiles are intended to operate *on* roadways ignores a critical part of the requisite analysis. As discussed in the now-precedential partial dissent from this Court's opinion in *Overall*, the question is whether the conveyance is intended to operate on *or alongside* the roadway.

Defendants cite MCL 324.82119(1), which prohibits the use of snowmobiles on public highways, but which also sets forth exceptions. Some of those exceptions only permit snowmobiles to cross roads. However, under MCL 324.82119(1)(a) and (b), snowmobiles are explicitly permitted to travel within highway right-of-ways unless explicitly and specifically prohibited by the DNR or the Michigan Department of Transportation. Thus, snowmobiles are clearly expected to operate *alongside* roadways. Under subsection (1)(c), snowmobiles may operate on the roadway itself in order to cross bridges or culverts; and under subsection (1)(h), they may be operated on roadways for special events. Finally, subsection (1)(f) specifically permits snowmobiles to be operated on the shoulders of roads under some circumstances, with the

---

[1] We agree with our dissenting colleague's observation that snowmobiles generally lack many of the safety features now legally mandated in automobiles; but given the facts (1) that tractors also generally lack many of those safety features, and (2) that most modern "complex safety systems" like airbags and seatbelts were either not mandatory or not even available when MCL 691.1405 was enacted in 1964, we find complex safety features an irrelevant distinction. In contrast, our dissenting colleague also observes that snowmobiles typically use skis and treads instead of tires. We agree that is a noteworthy distinction, but we think it less important than the transportational similarities between snowmobiles and automobiles.

[2] We also note that there is considerable state-by-state variation as to whether or when snowmobiles may be driven on roads. See < http://www.snowmobilers.org/snowmobiling-laws-and-rules.aspx >. This implies that, as with tractors, snowmobiles might be more or less commonly found on roadways depending on region and season. Defendants rely on *McDaniel v Allstate Ins Co*, 145 Mich App 603; 378 NW2d 488 (1985), which observed that under a now-repealed part of the Motor Vehicle Code, snowmobiles were definitionally "not designed for primary use on public highways." *McDaniel*, 145 Mich App at 608, citing former MCL 257.1501(e). This holding in *McDaniel* is clearly no longer applicable, and in any event, given the practical realities, we seriously doubt snowmobile manufacturers do not design snowmobiles for use on public highways. As discussed, a conveyance's primary use is not controlling.

obvious expectation that such use will actually occur. Clearly, therefore, snowmobiles are capable of more than incidental operation on roadways. Conversely, the golf cart operating near a concession stand at a football game in *Overall* might be physically capable of driving on a road, but golf carts are either specifically designed *not* to be used on roads or are designed as merely a convenient alternative to walking.[3]

Defendants finally argue that Pinney Bridge Road is not, in fact, a road, because it is listed as a "Designated Snowmobile Trail" by the Department of Natural Resources. We do not think that designation is dispositive. We are unaware of evidence, nor have defendants cited to any such evidence, that Pinney Bridge Road is *never* accessible to automobiles. The low-quality scanned images attached to defendants' motion are of no value to this question. Insofar as we can determine, defendants rely solely on Pinney Ridge Road having been designated as a snowmobile trail. Notably, MCL 324.82119(1)(f) provides that "a highway in a county road system" may, under some circumstances, be "designated and marked for snowmobile use." This includes roads that are actually snowplowed and, therefore, implicitly accessible to conventional automobile traffic. Even presuming Pinney Ridge Road was, in fact, either *de facto* or *de jure* not traversable by any vehicles other than snowmobiles, the record does not establish that a "designated snowmobile trail" is necessarily not a roadway.

Furthermore, we note that under the Vehicle Code, a " '[r]oadway]' means that portion of a highway improved, designed, or ordinarily used for vehicular travel." MCL 257.55. A "vehicle" includes "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." MCL 257.79. Although the Vehicle Code may not be binding, we do not think it irrelevant that a snowmobile would certainly constitute a "vehicle" and thus a snowmobile trail would constitute a "roadway" under the Vehicle Code's definitions.[4] Furthermore, automobiles are not-uncommonly used off-road, and many of them are capable of some degree of off-road usage with no aftermarket modifications. In any event, MCL 691.1405 requires a motor vehicle to be operated, but not necessarily on a roadway. Thus, how a proposed motor vehicle is being used at the time of the injury is one of several relevant considerations when determining whether it is a "motor vehicle." Even if Pinney Bridge Road is not a "roadway," that fact would be relevant but not dispositive.[5] We think it far more relevant that, at the time of the injury, the snowmobiles were being used for a combination of transportational and recreational purposes more akin to automobiles—albeit, perhaps, off-road automobiles—than limited equipment like a golf cart or forklift. Irrespective of the nature of Pinney Ridge Road, we would

---

[3] See < https://en.wikipedia.org/wiki/Golf_cart >.

[4] Further suggesting that the Vehicle Code is not irrelevant, our Supreme Court has explained that "because snowmobiles, albeit under limited circumstances, may be operated on highways," it is proper to charge a person under the OUIL provision of the Vehicle Code for operating a snowmobile on a highway while intoxicated. *People v Rogers*, 438 Mich 602, 607-608; 475 NW2d 717 (1991). Our Supreme Court thus explicitly recognized that snowmobiles do operate on roadways, which indirectly supports the conclusion that they are motor vehicles.

[5] We agree with our dissenting colleague that the trial court erred by considering only the actual use of the snowmobiles at the time of the injury.

find that the physical, design, and expected use characteristics of snowmobiles reveal them to be "similar motor-driven conveyances" irrespective of whether Pinney Bridge Road was a public roadway.

Because the snowmobiles owned by the DNR and operated by its conservation officers in the course of their governmental duties were motor-driven conveyances that could be expected to be operated, under certain circumstances, on or alongside a roadway, we agree with plaintiffs and the Court of Claims that they qualified as motor vehicles for purposes of the motor-vehicle exception to governmental immunity under MCL 691.1405. We respectfully disagree with our dissenting colleague that the above analysis ignores any of the requisite factors or considerations, and we find nothing in the record to suggest that further fact-finding in the trial court would alter our conclusion.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Douglas B. Shapiro